Would the attorneys who are going to argue the case please approach the podium, identify yourselves and the party you represent, and inform the court of how much time you would like to argue. Please be mindful that the microphone is for recording purposes only. It's not for amplification. So if you want to be heard in the entire courtroom, speak up. Good afternoon, your honors. My name is Stephen Richards. I represent the appellant, Rodney Woolford. I will be asking to argue for 15 minutes and to reserve 5 minutes for rebuttal. Very well. Good afternoon, your honor. Assistant State's Attorney Douglas Harbath, H-A-R-B-A-T-H, on behalf of the people. I anticipate a 15 minute argument. Very well. Mr. Richards. Thank you, your honors. May it please the court. I represent Rodney Woolford. As you know, he was convicted of aggravated kidnapping, aggravated criminal sexual abuse, and another offense. He was sentenced to 18 years. Throughout my argument, you know that I was the trial attorney as well as the appellate attorney, so if I refer to things that I did particularly, it was because I did them or I said them, and I'm not taking license with that. The issue here I think is larger than this particular case and is really kind of fundamental. As your honors know, the law has changed very dramatically in Illinois with the enactment of 115-7.3 and now 115-7.4. Traditionally, at common law, the general rule was that the prosecution was not allowed to introduce evidence of a general criminal propensity or a propensity to commit broad categories of offenses like sex offenses or domestic violence. However, the legislature has changed that and has allowed courts in proper cases to allow evidence of a general propensity to commit sexual offenses as is at issue in this case. The real question here is can such evidence be admitted? Can the plain field be extended to that extent without the offense being allowed to abide with proper evidence of non-propensity? And it's particularly, this case is kind of a model case because what you have here is the admission of evidence of propensity. Sort of at the far edge of such evidence can be admitted, but it's 20-year-old evidence that during therapeutic massages, Rodney Wolfer, by his own admission, both on the stand and by his prior statement, had gone beyond what a proper massage should be. He had made sexual contact and had sexual thoughts while massaging young women. Now, his counter evidence was that for 20 years, he had continued to do therapeutic massages. He had done therapeutic massages with women of that age, as well as adults, by the way. Thirteen-year-old girls. Thirteen-year-old girls. And his counter evidence involved a 14-year-old girl. So it was directly counter to what the state's evidence was. In other words, his point, and the point he had introduced was, I can show for 20 years I have been doing these sorts of massages and I haven't had sexual contact. There have been no complaints. I've been doing massages. They don't say anything bad happened during them. And, in fact, they were appreciative of his efforts in terms of a therapeutic massage, including in the case of a 14-year-old girl who had physical problems similar to the problems in the 1995 incident. So the question is, can this evidence be introduced? Can you let the prosecution attack and the defense cannot defend with the exact counter type evidence? That's the issue. Now, there's a dispute to begin with about what the proper standard of review is. Our contention is the proper standard of review here is de novo, because it is a matter of statutory construction, number one. Number two, the judge made it a legal issue. He didn't say he was exercising discretion on this point. What he said was that his understanding of the law based on the case from 1992, well before the statute, was that in general you cannot introduce evidence of non-propensity by specific incidents. He said this again and again. He said it during the motion to eliminate. He said it during the motion to reconsider. He said it when the state raised an objection to my opening statement in which he said I had gone beyond what he had allowed, to which point I deferred. He said that's fine. Now, I didn't bring it up again in closing argument. All I did was I said that I had a right to at least bring out the fact that one way that some of these women knew Mr. Walford was the fact that he had given them massages. That's all I was allowed to put in. That he had given them massages. Not how many, not the details. Well, massages to the character witnesses you put out. Correct. Not to the proper 14-year-old that you intended to put out. Well, in terms of... I'm just trying to clarify what you're... Okay. Well, in terms of... Let me make it absolutely clear. In terms of the proper, we had a number of witnesses, both parents who had children who had contact with Rodney Walford and would say that there was no sexual contact, and adults who had been given therapy, massages and so on. Now, with respect to two witnesses, and I did not call all those witnesses because I've been, partially because I've been precluded in general from going into these details, so it was a more limited number of character witnesses that were presented. There were two witnesses presented who were teenage girls who did receive massages. Now, as to those witnesses, the state said, objected to me even bringing out that they'd been given massages. My argument at that point, because the judge had ruled against me on the propensity issue at every stage, was I at least have the right to bring out the massages just to show how he knew them, just to show the contact. And the judge said, that's it. You can say he gave massages. You can't say why the massages were given. You can't say how often they were given. You can't say what the details were, what happened during the massages. Because that's not a propensity, and you can't do it. So I didn't. And that raises, the state's argument in their brief, as I understand it, is I was allowed to do what I wanted to do because I was allowed to bring out that there were benign massages, or that the jury would have simply concluded from the fact that these people were testifying ironically well for its behalf, they would have guessed that nothing bad happened because otherwise these people wouldn't testify as witnesses. Well, on that point, assuming for the moment the judge erred, the argument that the jury would have known, based upon the prior questions, the instances, and if you were allowed to ask those questions, it would have been in a positive manner for you. Well, I mean, I think that the state's argument, as I understand it, is despite the fact that the judge told me I couldn't put on the evidence, number one, despite the fact that he told me I couldn't argue the inference I wanted to argue, non-propensity, the same inference accounted for their evidence, that the jury would have guessed by the fact that these people were testifying as character witnesses that the massages were benign, and therefore they would have concluded that there were benign massages. I've taken my point because they would have drawn a conclusion that I couldn't argue and that the witnesses couldn't testify to. You know, this is like, I guess the analogy would be, if it's not an analogy, that would be inappropriate. I mean, their guns or their evidence gets to shoot with real bullets, and I get blanks. I mean, they were allowed to go into great detail, as the statute allows. Each witness is allowed to testify, he did this, he did that, he did the other. I couldn't say he gave a nice massage, same girl, same age, no sexual touching, no sexual contact. And that's what I should have been allowed to do. Following up on that, would you address the fact that it's your position that this raises to a level of reversible error? I do. It does raise to a level of reversible error because, for a couple reasons. One is the evidence as to what happened was close to the balance. Mr. Rolland took the stand and he denied having, and denied what I think E.P. stated happened, not to mention her name. He denied it. He particularly denied the kidnapping, which was the more serious charge for which he got the more severe sentence. So there was, and on the kidnapping, that in itself was a major issue because he was denying it. The evidence is not all that strong as to what happened. So it is a closely balanced case. But I think if you analyze more deeply, the key evidence that the state had was the propensity evidence. And this went directly to the propensity evidence. Take the propensity evidence out of the case, but just make that mental, and just leave it as a credibility conflict between the two of them. Very, very closely matched, closely balanced. Not guilty, in my view. Put the propensity evidence in, but don't allow us to rebut it. That's harmful. That's serious error. Moreover, it's also serious error because in violation, we maintain, of Illinois rules, the character witnesses were cross-examined by bringing up the 7.3 evidence and saying, would your opinion change knowing this and that and the other? All they were allowed to say was no, or it wouldn't change. They weren't allowed to explain why it wouldn't change. The reason why it wouldn't change was based upon their own experience with Rodney Wolford in terms of doing therapeutic massages and general not engaging in bad sexual conduct. And the fact that that was allowed should have opened the door at the minimum to the non-propensity evidence, as happened in cases well before we had 7.3 and 7.4. Again, they were allowed to attack Mr. Wolford through their witnesses and the power of conviction, 20 years old, and they were allowed to attack his character witnesses using the same evidence. And he was not allowed to defend. That's the heart of the issue. That's the constitutional violation. So essentially you're saying that if the court, in its discretion, allows propensity evidence in a sex case, then the defense should be allowed to present non-propensity evidence by way of specific acts of good conduct. Yes. And I think that's clearly what the statute says. I think were the statute to be interpreted differently, there's a serious constitutional problem because the state is allowed to introduce evidence which the defense is not allowed to rebut with counter similar evidence. But the statute itself is pretty clear. It says can rebut and it says specific instances. Is it a fair summary of your argument that the trial court applied the current statute and allowing propensity evidence in this type of case, but then resorted to the traditional common law approach that propensity evidence or specific acts of good conduct or bad conduct cannot be an element of a character witness's opinion? Your Honor, I don't believe I could have stated my position better than you have just stated it. I mean, that's fair to say. Your Honor, I do not have more to say than that. I was joking. I know you were joking, but I think if there are no further questions on these points, I will reserve further argument for rebuttal. But that in a nutshell is the issue, and we think it should be resolved by a ruling that this was a reversible error and for remand for a new trial. Well, let me ask you. Sure. You're not getting off that easy. Okay. The prosecution's asking your character witnesses whether their opinion would change if they knew about his prior specific acts of misconduct that were the 1995 conviction. Why was that prejudicial in this case where that was the gist of the state's case that the jury heard in direct testimony? Well, in that case in chief. Yeah, and that is a subtle and interesting point, which I think I didn't really address in my opening brief, but I addressed in my reply brief. I think it's a prejudice. First of all, I think it's a violation of the rule, because we could have a rule that you could do this as they do in federal court, but our rule doesn't provide for it. So it's a violation of the rule. All right. So they violated the rule. As soon as they violated the rule, was it prejudicial? I think it's prejudicial because what they're – and we did cite a case which mentioned this where character witnesses were cross-examined, not about other events, but about the actual events. They were said, you know, how do you maintain this position as to his character when he did X, Y, and Z? And that was held to be reversible, and the point that was made was it's beyond – I think it uses the defense witnesses as punching bags to make the state's point and to reemphasize that evidence to the jury and also discredit them by saying, look, how can you believe these people when you know about the 7.3 evidence and it doesn't change their opinion? So that's prejudicial, number one, to be able to make the state's case during the defense case in an improper way. Two, however, even though they already know about the 7.3 evidence, so it is prejudicial. But even assuming that would have not been prejudicial or assuming that error would not apply itself, it certainly opened the door to at least have the witnesses explain, yeah, the reason why I'm discounting the 7.3 evidence is because of my own experience with him because that's not my experience when he does massages or interacts with children. And that would be allowed under the rule or under 7.3? I think it's allowed under 7.3, but even assuming he ran against me on 7.3, it's allowed because the door had been opened by those questions. The witnesses are being attacked as the basis of their opinion, saying, how can you say this when this is true? And they would say, well, I say it because this is my experience with him. And they weren't allowed to do that. Therefore, manifestly prejudicial. Extremely prejudicial. It cut the heart out of the defense case. Well, it's a case of people versus time, because it says it must be a manifest prejudice. Well, in this case, manifest, closely balanced case, witness against witness, 7.3 evidence, very strong, even though old, and no opportunity to rebut the old 7.3 evidence by saying, listen, he has contact with children, he does massages with children, and he doesn't engage in sexual activity. That was the heart of the case, and it was extremely prejudicial. So I would say that the state would have the burden to prove that it was harmless beyond a reasonable doubt, and they cannot do so. And it is preserved error. It's not a question of point and error. Because, in your opinion, it's a closely balanced case. His word against her word. Correct. No physical evidence of cooperating. Delayed outcry. She was impeached with her inconsistent statements to the DCFS officer. He was not really impeached with any inconsistency at all, except he was asked about what had happened in 1995, and he admitted what he had said in a statement in 1995. Anything else? All right. Thank you. Good afternoon. Good afternoon, Your Honors. May it please the Court, again, Assistant State's Attorney Douglas Harbath on behalf of the people of the State of Illinois. So while the defendant has not expressly argued in oral argument the sufficiency of the evidence since it's come up, I want to start by saying that the evidence in this case was very strong, and to characterize it as closely balanced is, I think, mischaracterizes the record. The victim's testimony in this case was unimpeached on every charge. So closely balanced in the context that it's really a one-on-one delegation. So we've all read the record. We're all very familiar with the inconsistencies, the impeachment, the consistencies, and all that. So I think the meat of the issue really is his arguments with respect to the propensity evidence and his inability to rebut that propensity evidence through specific acts of conduct. Right. And I would agree it's a credibility case, absolutely. This came down to credibility. But I think so with regard to his ability, and I would take exception to his referring to this as his inability to rebut or his claim that the trial court denied him an opportunity to defend against the rebuttal evidence, the propensity evidence. That is completely untrue. In this case, the trial court's limited restriction, and that's what it was, it was a limited restriction. In the defense's own brief, he calls it a partial denial of my motion. That in and of itself shows that it was an exercise of discretion. It was a limited restriction of his rebuttal evidence under 7.3, but it was a reasoned and considered means of reconciling. And I would acknowledge that there is a need to reconcile. There is a potential conflict between 7.3e, which allows specific instances of conduct to put the evidence in and to rebut the evidence, but Rule of Evidence 4.5a, excuse me, 405a, is the historic prohibition against that evidence. So the trial court was faced with reconciling these two rules of evidence. You contend in your brief that the Supreme Court, when they passed these rules of evidence, said that our rules trump the statutory evidentiary rules. He replies by saying that the comments say that they don't. Now, if they're established rules of evidence, which 7.3 was before the rules of evidence, it's an effective statute. It's not overridden or abrogated by the rules. You would agree with that? I would 100%. And the case that talks about whether or not the rules of evidence trump a statutory rule of evidence is, of course, the Peterson case. But it's our position in this case that that rule only applies when there's an irreconcilable conflict between the rules of evidence. And in this case, I think it's a perfect example of there being no irreconcilable conflict. The judge in this case was actually specifically tasked with reconciling those two rules of evidence. And whether you want to call it split the baby or middle ground, whatever word or phrase you want to use to describe it, that's exactly what the trial court did. And the trial court did not bar all evidence of specific acts of good conduct. On the contrary, it allowed the defendant to specifically elicit from his character witnesses that the defendant on numerous, countless occasions gave benign therapeutic massages to women and young girls. I know, Justice Pierce, you asked whether or not it was just the adults that were getting these therapeutic massages. It was actually the girls, including a 14-year-old girl. She was five at the time. It was Cecilia Adams and her sister, Jordan Richardson, who was 14 at the time. So that went directly to the heart of the propensity evidence, and it was directly responsive. It was rebutting the propensity evidence. But his argument is that just by the witnesses saying I got therapeutic massages didn't get into what those massages entailed. And a jury might be left with a misunderstanding of whether it was a massage of her earlobes or her ankles. And he claims that he should have been entitled to specifically elicit testimony as to the nature of those activities because of the propensity evidence that the State was allowed to put in that was very graphic. And as I understand it, my understanding of the record was not that the defendant wanted to specifically bring out, was it a shoulder massage, was it a foot massage? It was much – the only thing that he wanted to ask and was prohibited from asking was a very simple question, and did the defendant do anything untoward to you during these massages or to your daughter, in the case where the daughter's – the mother was testifying? Did he ever molest your daughter? And that was sort of this nonconduct. It's not specific acts of good conduct to rebut the propensity. That was the giving massages. That was actual conduct. It was physical activity. Did he ever molest your daughter? Did he ever molest you in the case of the daughter's testifying? That was not an act of – a specific act of conduct. It was nonconduct. Well, no. Your conduct would be, was your conduct inappropriate? That's conduct. Right? Well, and I think it's – I think that's the gist of what he wanted to bring out. And I think he did get to elicit the gist of his – he certainly wasn't prohibited from presenting his defense. And it's inconceivable that these jurors who heard character witness after character witness talking about the glowing character and the reputation and opinion for peacefulness and sexual morality, that all these witnesses would testify to that if they'd been molested. It is just – it is beyond the pale. It is inconceivable that the jurors would sort of wonder whether or not, well, was this consensual sex that he had? Did he have – and that's what he says in his reply brief, that maybe the jurors thought that they had consensual – like they were his concubines. I mean, it's inconceivable that the jury would arrive at that conclusion. Justice Griffin, you asked my opponent, well, maybe was this harmless? Is this reversible there? And even if the judge should have allowed the defendant to ask the specific question, and did he ever touch you or argue to the defense, and he never touched these other individuals, the jury – it is inconceivable that the jury, that this would have affected the verdict, that they would have come to a different conclusion if he'd been able to ask that one question. And I think it all comes back to the strength of the evidence. You know, on many occasions, the truthness and the evidence lies in the minute details. You say, yes, it was presented, the jury was aware. But here you've got a defendant that wanted to go into details. And if it was already introduced, what would have been the harm to allow him going into the details? I mean, I guess the – with respect, the question is whether or not that mere – that small restriction, that limited restriction, and that's what it was. Because the judge did reverse – the trial judge did reverse himself. Originally, he was going to say, well, none of this comes in. You can't ask them anything about massages. And then before trial, he said, you know what, I'm going to let you ask them about massages. And then he did. So it was a partial restriction. So I think the question then is, was it – you know, could it have impacted the verdict? Would the jury have come to a different – is it a reasonable belief that the jury would come to a different conclusion if he'd been able to ask this extra question or these other questions about whether or not it was – was he touching you inappropriately or in your private parts? I think that was made abundantly clear to these jurors. All these witnesses for the defendant – and let me be clear. How can you say that with any sense of certainty? Because I think it defies common sense to believe that character witness after character witness would come in and harbor these glowing, wonderful opinions about the defendant if he sexually abused their daughters. It's just – it's incomprehensible. These witnesses would not testify that he was sexually immoral if he had molested their daughters. It is just beyond the pale. I understand. I guess that's my point. Can I ask about the Rule 7.3 and B and E? Isn't it clear that proof may be made by specific instances of conduct? I mean, what it says in B is evidence of the defendant's commission of another offense. Okay, that's what you put in. And then it says, or evidence to rebut that proof. And then it says in E, in a criminal case where evidence is offered under this section, proof may be made by specific instances of conduct and testimony. I don't – how couldn't it be clearer that they're entitled to put in specific instances? I know it's also qualified by Rule 4.5. And I get that, but this just seems so specifically at point to this case. I'm just in trouble. And I think that's – I agree, Your Honor. I agree, and that's why it was so extensively litigated. Counsel himself was filing his motions and the State was responding. This was litigated ad nauseum before trial, and it was very clear that 7.3E allows for viral evidence and it also, just like when the State's putting in the propensity evidence, they can introduce, of course, specific acts of conduct. And in rebuttal, the defense can introduce specific acts of good conduct, so to speak. But there is a conflict. I mean, it's sort of the elephant in the room. There is another rule of evidence that says that this evidence is historically prohibited. You cannot – Historically. Historically. Well, think about that. You know, historically. History changed, didn't it? The statute? If this is a burglary prosecution, you couldn't put in a 20-year-old burglary saying that he committed a 20-year-old burglary so he's got the propensity to commit another burglary. Right. You can't do that. Nobody would argue you could. But the legislature put in, in a sex crimes case, you can put in propensity evidence. So history is out the door when it comes to sex crimes. Well, I guess I would – in other circumstances when you don't have a longstanding rule of evidence prohibiting specific acts of conduct to show that a defendant acted in conformity therewith. So there is a conflict. I mean, that's – That's a sex case. Well, I guess that would mean that 7.3 trumps 405A, and Peterson says that can't be true. Unless there's an irreconcilable – I mean, if there isn't, if there is an irreconcilable conflict between these two rules of evidence, then 405A trumps it. And I guess my point is I tried to make in my brief that there's – in this case, under the facts of this case, there's no irreconcilable conflict. The judge acted appropriately and under – within his discretion and against it, not to beat it at horse, but the defendant was not prohibited from introducing this evidence. He wasn't – that he could not defend against the evidence, that he was prohibited from calling his character witnesses to, you know, to say certain things regarding specific acts of conduct. On the contrary, he was. He just wasn't allowed to do everything that he wanted. There's a case called People v. League, and it's just an analogous case. It's when you look at the – when cross-examination is restricted and the constitutional claim is raised, you look at what the defendant was allowed to do, not what he was prohibited from doing. So I think in this case, let's look at what the defendant was allowed to do, and he was allowed to ask questions about the misogyny, and he was – misogynist, excuse me. He was allowed to elicit that. So I don't think – I mean, the defense is portraying this as a blanket prohibition, and he wasn't allowed to defend against the propensity evidence, and I don't think that's an accurate statement. What about the position that the State opened the door? So in cross-examination, generally a witness cannot be cross-examined about specific acts of misconduct on the part of the defendant, and the purpose of that rule is to not dirty up the defendant, to not bring out otherwise inadmissible prior bad acts that would not be – you could not bring out in your case in the sheet. But this is not without exception. So when a witness – it's elementary that any witness can be cross-examined on their motive and their bias in this case, their willingness to testify. And I think their willingness to testify was intimately connected to their awareness of whether or not the defendant had committed prior sexual abuse. If they were not aware of that, their opinion regarding his moral chastity is, how can they possibly credibly opine that he's morally chaste if they're not aware of this? So I think the State – for that reason, the State was allowed to ask that question. And I think it was – Justice Pierce asked, well, was he prejudiced by this? And I would say the defendant was not prejudiced because this evidence had already come out. So the purpose of the rule is to keep out this evidence, this prior bad acts in the first place. Don't ask the question so that the jury's going to hear this. Prior sexual abuse? We've never heard about this before. In this case, half the trial involved prior sex abuse. So the State was not enlisting any new evidence. They just asked a very narrow question. Were you aware of these prior acts of sexual misconduct? And it went directly to the credibility of their opinion. So I don't think the defense opened the door to anything for that reason. But it's also true because the State didn't succeed in impeaching these character witnesses. As the trial court said when ruling on this before trial, the judge said, well, State, you know you're going to be stuck with whatever response. And that's true. The State's stuck with the response. They can't bring in collateral evidence to impeach that. And, of course, the State was stuck with that. They asked all these witnesses. Actually, they only asked – I think there were three witnesses. Were you aware of this? Not all of them. They didn't ask the children, and I don't believe – they didn't ask the defendant's daughter when she testified and a few other witnesses. Just a few of the witnesses. Were you aware of this? And the State was stuck with the response. No, it didn't change my opinion. So there was no way to rehabilitate those witnesses on redirect examination. I think if the – to the extent that the trial court should have allowed additional questions regarding the prior massages, even if this court finds it was an abuse of discretion, it couldn't possibly have changed the result in this case. All these witnesses testified for the defendant that he had a glowing reputation for peacefulness and for sexual morality. Combined with the evidence, the other crime's evidence, the evidence in this case was very, very strong. It was overwhelming. It could not possibly have swayed the jurors that being prevented from asking this one additional question that possibly could have changed the mind of the jurors regarding his guilt or innocence. So for all those reasons, we would ask that this court affirm the defendant's convictions for aggravated kidnapping, aggravated criminal sexual abuse. Thank you. Thank you. Mr. Richards. You know, just a couple of relatively minor points. First of all, as to the statutory issue and the constitutional issue brought up by the state in terms of a possible conflict between 7.3 and the rules, I was, in another case, the Samuel Turner case, which is a published opinion where I was the attorney, I argued exactly the same thing that the state did. And I lost because what the court said in Samuel Turner, which I think is consistent with what was said in Peterson, is that there is the committee comments that say in general there's no, the rules are not intended to supersede the statutory rules of evidence. And I think the most telling evidence for that is that if you look at the only statutes, there are many statutes on evidence that have been passed over the years. And not all of them are repeated word for word in the rules of evidence. But the rules of evidence were intended to incorporate them, except in the case like in Peterson where there was an obvious conflict. In Peterson, actually, the conflict was not only with the rules, it was also with the common law. The statute was not abrogated a common law rule and the Illinois Supreme Court rule. So that was a different situation. Now, in terms of what the defendant was allowed to do and not allowed to do, I think you just need to go back to the record. In the brief, I talk about the discussion, the record volume 5, F12, and F12-13, where the judge made the specific ruling allowing me to do something. First of all, that was mid-trial. Before trial, he said you can do nothing. After my opening statement, he said you can do nothing, and I was surprised you didn't try to do anything because you're not allowed to do it. All he said was I could bring out that Cecilia Adams and Jordan Adams had received massages. Not that they were therapeutic, not that they were benign. I made offers of proof as to that Cecilia Adams had been given it for a medical condition and she was bringing it back and forth to the court. I wasn't allowed to do that. Maybe I should have made more detailed offers of proof involving the body parts and the length and the strength. But I think it was quite clear. The judge was not allowing me to do anything of that nature, and he told me so. So I think it's clear that I could have done more. I would have done more. It would have been effective because it would have rebutted directly the claim that Rodney Woolford was using therapeutic massages as a cover for sexual abuse of young girls, and his opposition that he was not in this instance and should have been found not guilty. If there are no further questions, I again ask that the conviction be reversed. If not, I have it remanded for a new trial. Thank you. Thanks. On behalf of the panel, we appreciate the briefing on this matter. It was excellent on both sides. It's a somewhat complicated issue, but we'll do our best with it. Thank you very much. The court stands in recess.